113 S.W.3d 27 (2003)
In the Interest of M.N.G.
No. 2-01-149-CV.
Court of Appeals of Texas, Fort Worth.
May 8, 2003.
Rehearing Overruled July 24, 2003.
*29 West Texas Legal Services, Scarlett L. Schendel, Fort Worth, for Appellant.
Natalie Seitz Lloyd, Burkburnett, pro se.
Winstead, Sechrest & Minick, PC, David F. Johnson, Fort Worth, for Appellees.
PANEL B: DAY, LIVINGSTON, and GARDNER, JJ.

OPINION
ANNE GARDNER, Justice.
M.N.G.'s paternal grandmother appeals a trial court order denying modification of conservatorship in a suit affecting the parent-child relationship. This appeal raises the issue of whether the United States Supreme Court decision in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), altered the necessary showing to obtain modification of conservatorship under the Texas modification statute so as to render that statute unconstitutional as applied to M.N.G.'s father. We reverse and remand.

FACTUAL BACKGROUND
M.N.G.'s father and mother were divorced on January 13, 1989. Father was named sole managing conservator of their son, M.N.G., who was then two years old. However, Father voluntarily left M.N.G. with M.N.G.'s grandmother after the divorce, and M.N.G. lived with his grandparents from that time until the time of trial, when he was fourteen years old.
With the exception of one $50 payment, neither the father nor the mother provided the grandparents with any financial support for M.N.G. Due to lack of financial support from the parents, Grandmother obtained financial support from the State for M.N.G., including Medicaid and food stamps. On October 24, 1996, the Office of the Attorney General of the State of Texas filed a Notice of Change of Status and Motion for Further Orders, seeking that child support payments be made by M.N.G.'s father and mother to Grandmother, with whom M.N.G. was living.
Grandmother filed a Petition in Intervention, seeking to modify the original custody decree to appoint her as M.N.G.'s sole managing conservator. M.N.G. filed an affidavit with the court stating that he chose Grandmother as his managing conservator. Father opposed the modification of the decree and sought return of the child to him. Following a final hearing, the trial court rendered its final order February 15, 2001, denying Grandmother's request for modification and ordering that M.N.G. be surrendered to Father immediately.

THE MODIFICATION STATUTE
When the family code was originally enacted in 1973, modification of sole managing conservatorship was measured by the test of a material and substantial change in circumstances, coupled with a best interest test. Act of May 25, 1973, 63rd Leg., R.S., *30 ch. 543, § 14.08, 1973 Tex. Gen. Laws 1411, 1425; Bates v. Tesar, 81 S.W.3d 411, 426 (Tex.App.-El Paso 2002, no pet.); Jenkins v. Jenkins, 16 S.W.3d 473, 477 (Tex. App.-El Paso 2000, no pet.). In 1975, an additional prong was added, requiring a finding that retention of the existing managing conservator would be "injurious" to the welfare of the child. Act of June 2, 1975, 64th Leg., R.S., ch. 476, § 29, 1975 Tex. Gen. Laws 1253, 1265; Bates, 81 S.W.3d at 426. In 1995, that requirement was eliminated from the statute when the "positive improvement" element was added. Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 47, 1995 Tex. Gen. Laws 3888, 3905-06; Bates, 81 S.W.3d at 426.
The terms of the modification statute at the time of trial as set forth in the family code provided as follows:
§ 156.101. Grounds for Modification of Sole Managing Conservatorship
(a) The court may modify an order that designates a sole managing conservator of a child of any age if:
(1) the circumstances of the child, sole managing conservator, possessory conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order; and
(2) the appointment of the new sole managing conservator would be a positive improvement for the child.
(b) The court may modify an order that designates a sole managing conservator of a child 10 years of age or older if:
(1) the child has filed with the court in writing the name of the person who is the child's choice for managing conservator; and
(2) the court finds that the appointment of the named person is in the best interest of the child.
Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 47, 1995 Tex. Gen. Laws 3888, 3905-06, amended by Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 16, 1999 Tex. Gen. Laws 4696, 4700, amended by Act of May 22, 2001, 77th Leg., R.S., ch. 1289, § 5, 2001 Tex. Gen. Laws 3108, 3108-09 (current version at TEX. FAM.CODE ANN. § 156.101 (Vernon 2002)).[1] Thus, at the time of the modification proceedings in this case, the statute required the party seeking modification to prove either that the circumstances of the child, the sole managing conservator, the possessory conservator, or other party affected by the original order have materially and substantially changed, and that appointment of a new managing conservator will be a positive improvement for the child or that a child ten years of age or older filed a writing naming the person the child chose as his managing conservator and appointment of the chosen person as the child's managing conservator is in the best interest of the child. Id.

THE TRIAL COURT'S FINDINGS AND CONCLUSIONS
The trial court's findings of fact and conclusions of law are silent concerning whether there had been a material and substantial change in circumstances as to the child or any party affected by the original order or whether modification of conservatorship would be a positive improvement for M.N.G. Instead, the trial *31 court found that there was "insufficient evidence to establish that [Father] (a) has, by act or omission, harmed the child in the past, (b) is in any way unfit as a custodial parent, or (c) poses an actual or potential threat of physical or emotional harm to the child as the custodial parent." The trial court included a section in its findings of fact and conclusions of law entitled "State of the Law":
This Court recognizes that the current version of § 156.101, Texas Family Code, does not include the previously-required proof that retention of the current managing conservator would be injurious to the welfare of the child; that is, the current statute no longer requires any showing of the custodial parent's unfitness or danger to the child.
However, this Court is of the opinion, and finds, that the holding in, and the rationale of, Troxel v. Granville, 530 U.S. 57[, 120 S.Ct. 2054, 147 L.Ed.2d 49] (Sup.Ct. [sic] 2000), as applied in this case, imposes the additional requirement of proof of actual or potential harm to the child or of parental unfitness. To consider the modification requested by the non-parent intervenor by any lesser standard would be an unconstitutional infringement on [father's] right to make decisions concerning the care, custody, and control of his son.
The trial court then concluded, as a matter of law, that Grandmother had not presented "sufficient credible evidence" to demonstrate that father was unfit as a custodial parent or posed a threat to M.N.G.'s safety.

ISSUES
Grandmother contends the trial court committed errors of law by imposing requirements of proof of actual or potential harm or proof of parental unfitness in order for her to establish a right to modification of custody, rather than following the Texas modification statute, and in failing to follow In re V.L.K., 24 S.W.3d 338, 342 (Tex.2000) (holding the parental presumption does not apply in modification proceedings), thereby misapplying the statute. See TEX. FAM.CODE ANN. § 156.101.[2] Father responds that the trial court correctly retained him as sole managing conservator. He argues that the trial court correctly concluded that the Texas modification statute is unconstitutional, as applied to him, under Troxel's due process analysis.[3] U.S. *32 CONST. amend. XIV; Troxel, 530 U.S. at 65-67, 120 S.Ct. at 2059-61. He further argues that, when a modification proceeding pits a parent against a non-parent, the parental presumption must apply as a matter of constitutional due process. Consequently, Father argues, the trial court correctly placed the burden on Grandmother to prove either (1) Father's parental unfitness or (2) actual or threatened harm to M.N.G. by retention of Father as the managing conservator and that there is insufficient evidence to support either element to justify awarding custody to Grandmother.

STANDARDS OF REVIEW
A trial court's order modifying conservatorship is reviewed under an abuse of discretion standard. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982); In re T.D.C., 91 S.W.3d 865, 872 (Tex. App.-Fort Worth 2002, pet. denied); Bates, 81 S.W.3d at 424. To determine whether a trial court abused its discretion, we must decide whether the trial court acted arbitrarily or unreasonably, or without reference to any guiding rules or principles. Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex.1999); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). A clear failure by the trial court to analyze or apply the law to the facts correctly is an abuse of discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding); Transportes Aereos de Coahuila, S.A. v. Falcon, 5 S.W.3d 712, 717 (Tex.App.-San Antonio 1999, pet. denied).

TROXEL
We first address the correctness of the trial court's analysis of and reliance upon Troxel to impose a requirement that parental unfitness or actual or potential harm to the child be established as an essential element for modification of custody by Grandmother. Troxel arose from a visitation dispute between a mother and paternal grandparents. The mother sought to limit the grandparents' visitation after the children's father committed suicide. 530 U.S. at 61, 120 S.Ct. at 2057. The grandparents then filed a petition to obtain visitation rights under a Washington statute that allowed "any person" to petition for visitation rights "at any time" and authorized the trial court to grant visitation rights whenever "visitation may serve the best interest of the child." Id. at 61, 120 S.Ct. at 2057-58. The Washington Supreme Court held the statute facially unconstitutional because it infringed on the fundamental right of parents to rear their children without requiring a showing that the child might be harmed by the decision and because it was too broad in allowing any person to petition for visitation at any time. Id. at 63, 120 S.Ct. at 2058. The Washington court also determined that the nonparental visitation statute was unconstitutionally broad because it allowed a trial court judge to order visitation based solely on what the judge believed was in the best interest of the children. Id. at 63, 120 S.Ct. at 2058-59.
The United States Supreme Court affirmed the Washington Supreme Court's judgment. Id. at 63, 120 S.Ct. at 2059. Justice O'Connor, writing for a plurality, held that, as applied to the particular facts, the statute unconstitutionally infringed on a parent's right to make decisions concerning the care, custody, and control of her children. Id. at 68-69, 73, 120 S.Ct. at 2061, 2064.[4] Basing its decision on the *33 sweeping breadth of the Washington nonparental visitation statute, the Supreme Court expressly did not consider whether due process requires a showing of harm or potential harm to the child before granting visitation, and did not define the precise scope of the parental due process right. Id. at 73, 120 S.Ct. at 2064.
In Troxel, Justice O'Connor wrote that special weight must be given to a fit parent's decisions regarding denial of visitation to the grandparents as third persons to protect the fundamental constitutional right of a parent to make decisions concerning the care, custody, and control of her children. Id. at 65-66, 70, 120 S.Ct. at 2059-60, 2062. Justice O'Connor explained that visitation statutes are designed to protect the relationships of children with third parties who undertake duties of a parental nature and the opportunity of children to benefit from relationships with persons such as grandparents. Id. at 65, 120 S.Ct. at 2059. However, she concluded that the Washington visitation statute at issue was not suitably tailored, as applied to the mother, because it was too broad. The Washington statute placed no limits on either the persons who may petition for visitation or the circumstances under which visitation may be granted. Id. at 72-73, 120 S.Ct. at 2063-64. Moreover, Justice O'Connor pointed out the statute empowered a trial court to impose its judgment over a parent's in deciding a simple dispute over the length of visitation to be allowed the grandparents based solely on the trial judge's belief as to the best interest of the child. Id. at 67-68, 73, 120 S.Ct. at 2061, 2064.
Father contends the trial court correctly concluded that the Texas modification statute is likewise unconstitutional in allowing modification of managing conservatorship by awarding custody to a nonparent based solely on the trial court's subjective determinations of a material change in circumstances and positive improvement. According to Father, these requirements are too vague and broad to protect his constitutional due process rights as a fit parent to direct the care and custody of his child. We disagree.
Troxel involved a visitation statute, not a statute dealing with modification of custody. The purposes of a non-parental visitation statute, as explained by Justice O'Connor, presume fitness of the custodial parent. As discussed below, the purposes of the Texas modification statute are entirely different from a visitation statute, and the modification statute does not presume fitness of the custodial parent. Additionally, contrary to the conclusion of the trial court, we do not read the decision of the plurality in Troxel as determining that the Due Process Clause requires a showing of harm or potential harm to the child. Troxel does not support the trial court's placing of the burden on Grandmother to show unfitness of Father or harm or potential harm to the child as predicates for modification.
The modification statute's requirement of a material and substantial change of circumstances is predicated upon the doctrine of res judicata as to the best interest of the child at the time of the original decree awarding conservatorship. See Watts v. Watts, 563 S.W.2d 314, 316 (Tex.Civ.App.-Dallas 1978, writ ref'd n.r.e.). The policy behind the requirement of a material and substantial change is to prevent constant relitigation with respect to children. Id. The concept that the issue *34 of best interest at the time of the divorce is res judicata is incorporated into the requirement that in a modification proceeding, the party seeking custody must show a material and substantial change in circumstances since the original decree. Bates, 81 S.W.3d at 423. The requirement of this showing serves a valid purpose of significantly limiting the trial judge's discretion and prevents the modification statute from being unconstitutionally broad.
Additionally, as with all suits regarding conservatorship of a child, Texas courts have consistently held that "`[t]he best interest of the child shall always be the primary consideration of the court' in a proceeding to change managing conservators." In re T.D.C., 91 S.W.3d at 873; see TEX. FAM.CODE ANN. § 153.002; In re M.R., 975 S.W.2d 51, 53 (Tex.App.-San Antonio 1998, pet. denied); In re Marriage of Chandler, 914 S.W.2d 252, 253-54 (Tex. App.-Amarillo 1996, no writ).[5] In In re T.D.C., this court noted its agreement with those courts of appeals that have concluded there is no meaningful distinction between "positive improvement" and "best interests" of the child. 91 S.W.3d at 873 n. 6.
The Texas Family Code does not define or set out the relevant factors to be considered when determining whether a requested change in managing conservatorship is in the best interest of or a positive improvement for a child. However, in other contexts involving a best interest analysis, Texas courts have applied the Holley factorsa nonexhaustive list of considerations for determining a minor's best interest. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976); see Bates, 81 S.W.3d at 433 (including Holley factors in list of factors to ascertain best interest of child in parental relocation context); In re Doe 2, 19 S.W.3d 278, 282 (Tex.2000) (applying Holley factors for best interest determination in judicial bypass provision of parental notification act); In re Marriage of Bertram, 981 S.W.2d 820, 822-23 (Tex.App.-Texarkana 1998, no pet.) (applying Holley factors for best interest determination in conservatorship proceeding). The Holley factors have also been considered to determine whether modification of conservatorship would be in the best interest of or a positive improvement for a child. Turner v. Turner, 47 S.W.3d 761, 767 (Tex.App.-Houston [1st Dist.] 2001, no pet.).
Included in the Holley factors are the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and any excuse for the acts or omissions of the parent. Holley, 544 S.W.2d at 371-72. The Texas Supreme Court expressly stated in Holley, and recently reiterated in In re C.H., that these considerations are not exhaustive. In re C.H., 89 S.W.3d 17, 27 (Tex.2002); Holley, 544 S.W.2d at 371-72. In the context of custody modification, other factors to be considered include the child's need for stability and the need to prevent constant litigation in child custody cases. V.L.K., 24 S.W.3d at 343.
*35 In Troxel, in contrast, the United States Supreme Court observed that the Washington Supreme Court had declined to construe the nonparental visitation statute at issue narrowly to require consideration of any specific factors but, instead, had interpreted it literally and broadly as allowing the trial court to order visitation with any person based solely on what the trial court believed to be in the child's best interest. 530 U.S. at 67, 120 S.Ct. at 2061. The Supreme Court agreed that the breathtakingly broad language of the Washington statute, as thus construed, contravened the parent's fundamental right to make childrearing decisions. Id. Considering the Texas modification statute in light of the policy considerations behind it, as well as the case law concerning the statutorily required elements, we conclude that the Texas statute is not too vague or overbroad to protect Father's constitutional due process rights. As construed by the courts, the Texas modification statute necessarily includes consideration of the fitness of the parent and whether a change in custody would harm the child, regardless of whether those findings are constitutionally required.
We agree with Grandmother that, absent a directive imposed by Troxel requiring specific prerequisites for modification of conservatorship, the trial court erred and, consequently, abused its discretion in placing the burden on Grandmother to establish unfitness of Father or actual or potential harm to the child rather than the elements required by the statute.

THE PARENTAL PRESUMPTION
Father also argues that he is constitutionally entitled to the parental presumption that the best interest of a child is served by awarding custody to a natural parent, codified in the Texas Family Code as follows:
[U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.
TEX. FAM.CODE ANN. § 153.131(a) (Vernon 2002).
Father points out that the parental presumption, applicable in the initial determination of custody upon divorce, is rebuttable by proof by a nonparent that appointment of the parent would significantly impair the child's health or development, citing Brook v. Brook, 881 S.W.2d 297, 298 (Tex.1994). However, Father also recognizes, as he must, that the Supreme Court of Texas in In re V.L.K. held that the parental presumption is not available to a natural parent in modification proceedings. 24 S.W.3d. at 341-43. In essence, Father contends that, when a modification proceeding pits a parent against a nonparent, the parental presumption nevertheless must apply as a matter of constitutional due process, so as to place the burden on a nonparent to prove unfitness of the parent or a threat of harm to the child if the parent is retained as managing conservator, in order for the nonparent to obtain custody.
The basis for the parental presumption is the "natural affection usually flowing between parent and child." V.L.K., 24 S.W.3d at 341; Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, 790 (1955). This presumption is deeply embedded in Texas law, and the Texas Legislature codified the presumption in the family code section that governs original custody determinations, but not in the sections that govern modification of managing conservatorship. TEX. FAM.CODE ANN. §§ 153.131, 156.101 *36 .1045 (Vernon 2002); V.L.K., 24 S.W.3d at 341-42; Lewelling v. Lewelling, 796 S.W.2d 164, 166 (Tex.1990); Mumma v. Aguirre, 364 S.W.2d 220, 221 (Tex.1963); Legate v. Legate, 87 Tex. 248, 28 S.W. 281, 282 (1894).
The Texas Supreme Court determined in V.L.K. that, whatever effect the parental presumption may have in an original custody proceeding, it cannot control a suit to change custody because a modification statute addresses different policy concerns than a statute governing an award of original custody. V.L.K., 24 S.W.3d at 342-43; Taylor, 276 S.W.2d at 790; Bates, 81 S.W.3d at 421.
In the modification context, the State has a compelling interest to protect the child's need for stability and to prevent constant litigation in child custody cases. V.L.K., 24 S.W.3d at 342; Hogge v. Kimbrow, 631 S.W.2d 603, 604-05 (Tex.App.-Beaumont 1982, no writ). Because a change in custody usually disrupts the child's living arrangements and the channels of a child's affection, and in effect alters the entire tenor of the child's life, a change should be ordered only when the trial court is convinced that a change is to be a positive improvement for the child. V.L.K., 24 S.W.3d at 343; Taylor, 276 S.W.2d at 790; Simmons v. Hitchcock, 283 S.W.2d 84, 87 (Tex.Civ.App.-El Paso 1955, no writ). We decline to accept Father's argument, which flies in the face of V.L.K., that the parental presumption must apply in the modification context.
In this case, the trial court did not follow the statute's requirement that there must be a material change in circumstances, gave no consideration to M.N.G.'s written choice of Grandmother as his managing conservator, and made no finding concerning whether modification of custody would be a positive improvement for M.N.G. Instead, the trial court improperly imposed a burden on Grandmother to establish unfitness of Father or harm or potential harm to M.N.G. in retaining Father as managing conservator to support her right to modification of custody, and then found that she failed to carry that burden as to either element. Those findings were inadequate because they did not address the controlling elements required to determine whether modification was appropriate under the statute, and will not support the judgment. See In re Marriage of Edwards, 79 S.W.3d 88, 96 (Tex.App.-Texarkana 2002, no pet.) (holding findings not addressing essential elements for appointment of receiver inadequate to support order as matter of law).
Furthermore, we may not imply the required findings, as the parties urge us to do: Grandmother contends that the evidence is legally and factually sufficient to support the judgment based on implied findings of a material change in circumstances and that appointment of her as M.N.G.'s new sole managing conservator would be a positive improvement for M.N.G., and Father contends that it is not. Where a trial court's findings of fact and conclusions of law are based on an erroneous interpretation of the law, an appellate court may not imply fact findings to support the judgment. Wilson v. O'Connor, 555 S.W.2d 776, 781 (Tex.Civ.App.-Dallas 1977, writ dismissed); see Tex.R. Civ. P. 299 (mandating that judgment may not be supported by presumed finding on any ground of recovery or defense, no element of which has been included in the findings of fact); Las Vegas Pecan & Cattle Co., Inc. v. Zavala County, 682 S.W.2d 254, 256 (Tex.1984).

CONCLUSION
We hold that section 156.101 is not unconstitutional as applied to M.N.G.'s father. We further hold that the trial court *37 abused its discretion by not following the requirements for modification of conservatorship of a child contained in family code section 156.101. Therefore, we sustain Grandmother's issues. Accordingly, we reverse the trial court's order denying modification and remand for a new trial.
NOTES
[1] As amended, effective September 1, 2001, after the proceedings and final order in this case, the current version of section 156.101 eliminates the requirement of a showing of "positive improvement" and adds a third ground for modification: "the conservator who has the exclusive right to establish the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months." TEX. FAM.CODE ANN. § 156.101(3) (Vernon 2002).
[2] Hereinafter, all references to TEX. FAM.CODE ANN. § 156.101 in this opinion will refer to the version of the statute in effect at the time of the trial court's ruling, unless indicated otherwise.
[3] In his brief, father also claims the modification statute is unconstitutional as applied to him because it allegedly violates the equal protection and privileges and immunities clauses, his right of association, and his due course of law rights. U.S. Const. amend. I, IX, XIV; Tex. Const. Art. I, §§ 3, 19. Father did not raise any of these issues in the trial court. Generally, before a party may complain on appeal, the alleged error must be brought to the trial court's attention; however, a party who obtains a favorable judgment has no reason to complain to the trial court and does not waive alternative grounds denying recovery when the judgment denies recovery on a ground that is later reversed. See Oak Park Townhouses v. Brazosport Bank of Tex., N.A., 851 S.W.2d 189, 190 (Tex.1993). Nevertheless, the alternative grounds must have been raised in the trial court before they can be considered to support the judgment. See id.; see also Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990) (holding that when no findings of fact or conclusions of law are requested or filed, appellate court will imply that trial court made all findings necessary to support judgment and will affirm judgment if it could be upheld on any legal theory that found support in evidence). A party may bring a matter to the court's attention for the first time on appeal only when fundamental error exists. Mapco, Inc. v. Carter, 817 S.W.2d 686, 687 (Tex.1991); El-Kareh v. Tex. Alco. Bev. Comm'n, 874 S.W.2d 192, 194 (Tex.App.-Houston [14th Dist.1994], no pet.). Because none of Father's alternative constitutional issues raise fundamental error, we will not address them.
[4] In their concurrences, Justices Souter and Thomas concluded that the statute was overly broad on its face and would not have addressed whether it was unconstitutional as applied. Id. at 75, 80, 120 S.Ct. at 2065, 2067 (Souter, J., concurring; Thomas, J., concurring).
[5] The version of the modification statute at issue did not expressly set forth the "best interest" requirement, but that omission was remedied in the 2001 amended version. TEX. FAM.CODE ANN. § 156.101 (Vernon 2002).