# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00532-CV

**Daniel Ceniseros, Appellant**

**v.**

**Kayla Di'Lynn Dry Rychlik, Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT NO. B-11-0254-AG, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Daniel Ceniseros (Father) appeals the trial court's order in a suit to modify the parent-child relationship, giving appellee Kayla Di'Lynn Dry Rychlik (Mother) the right to designate the primary residence of the couple's children. In two issues, Father contends that the trial court abused its discretion in concluding that (1) there has been a material and substantial change in circumstances since the prior order, and (2) the modification would be in the best interest of the children. We will affirm the trial court's order.

## BACKGROUND

Mother and Father's twin children were born in 2011. That same year, after the relationship between Mother and Father ended, the trial court signed an original order in a suit affecting the parent-child relationship appointing Mother and Father joint managing conservators and giving Mother the exclusive right to designate the primary residence of the children. On

December 18, 2014, the order was modified to provide, in accordance with the parents' agreement, that Father would be the joint managing conservator with the exclusive right to determine the children's primary residence and that Mother would have access to the children under a standard possession order schedule. In addition, the 2014 order stated that if Father "is scheduled to work beyond 10:00 p.m., then [Father] shall advise [Mother] and [Mother] shall have the option to pick up the children by 8:00 p.m. and return them either to [Father], daycare, or school by 8:00 a.m. the following morning."

In June 2016, Mother filed a petition to modify the parent-child relationship, seeking to be designated as the joint managing conservator with the right to determine the primary residence of the children. At the final hearing, Mother testified that her chief complaint, and the reason that she had decided to seek the modification, was that Father was not allowing her to spend time with the children and that he was instead allowing his sister Ana Ceniseros to care for the children when he was unavailable. Mother explained that she believed that the children were, in fact, living with Ana and that the situation was not "fair for [the children]" because "[t]hey don't know who's picking them up [from school]. They don't know if they're staying the night at Ana's or staying the night at dad's or staying the night at mom's." Mother stated that she would be able to provide the children with the structure and stability they needed. In addition, Mother cited a string of text messages sent on June 15, 2016, in which Father made "harassing" and "demeaning" statements in response to her offer to take care of the children when Father was unavailable. Mother explained that these messages from Father were "the last straw" leading to her decision to file her petition for modification.

2

In response to Mother's testimony, Ana and Father both denied that the children were living with Ana or that the children regularly spent the night at Ana's house. Ana testified that she had a close relationship with Father and with the children and that she would help Father with the children whenever needed, but the children did not live with her. Similarly, Father testified that he has a very supportive extended family and that when he needs help with picking up the children from school he often asks Ana because she lives nearby and is willing to help. Both Father and Ana acknowledged, however, that there had been occasions in the past when the children would stay the night at Ana's house when Father, a bar and restaurant manager, had to work late at night.

Father also testified about the relationship between Mother and himself. According to Father, Mother has a history of abusing drugs and was not very stable in 2014 when the prior order was signed, but was now doing better and was "on the right path." Father described Mother's new husband as "the best thing to happen to her" and as "a good guy" who gets along well with the children. Father explained to the court that although he and Mother sometimes did not get along well in the past, their relationship has improved greatly since Mother met her current husband, and Father now wants Mother to be more involved in the children's lives. Finally, the trial court heard from numerous witnesses, including the children's elementary school teachers and relatives, who testified that both children were happy and well adjusted and that both parents were good parents who loved their children.

At the conclusion of the hearing, the trial court granted Mother's petition. On July 5, 2017, the trial court signed an order stating that both parents would continue as joint managing conservators but that Mother, not Father, would have the right to determine the children's primary residence. Upon request, the trial court entered findings and fact and conclusions of law. Among

3

other things, the trial court found that "Father refused to cooperate with visitation and ignored the Court's Order to advise Mother when he would work overnight" and that " the children were often with Father's sister when Father worked past 10:00 p.m., so the children were not in a parent's home many nights." Finally, the court determined that "[t]he circumstances of the children, Mother, and Father have materially and substantially changed since rendition of the previous order" and that "[d]esignating Mother as the person with authority to establish the children's primary residence is in the children's best interest." This appeal followed.

**STANDARD OF REVIEW**

When the trial court appoints joint managing conservators, it must designate the conservator who has the exclusive right to determine the primary residence of the child. Tex. Fam. Code § 153.134. To prevail on a petition to modify the terms of conservatorship, including a modification of which conservator will have the right to determine the children's primary residence, the party seeking modification must establish that (1) "the circumstances of the child[ren], a conservator, or other party affected by the order have materially and substantially changed" since the date of rendition of the prior order, and (2) modification is in the children's best interest. *Id.* § 156.101(a)(1).

We review a trial court's decision to modify conservatorship for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner or whether it acted without reference to any guiding principles. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

4

Absent a clear abuse of discretion, the trial court's order modifying the prior order will not be disturbed on appeal. *Zeifman*, 212 S.W.3d at 587.

In family law cases, the abuse-of-discretion standard overlaps with traditional sufficiency standards of review. *Id.* at 587-88. As a result, legal and factual sufficiency of the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Id*. at 587. In determining whether the trial court abused its discretion, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in its application of that discretion. *Echols*, 85 S.W.3d at 477-78. The focus of the first issue is on the sufficiency of the evidence under traditional sufficiency-review standards. *Zeifman*, 212 S.W.3d at 588. Under the second issue, the appellate court determines whether, based on that evidence, the trial court made a reasonable decision. *Id*.

To determine if the evidence is legally sufficient to support the trial court's exercise of discretion, we consider the evidence in the light most favorable to the trial court's findings if a reasonable factfinder could and disregard evidence to the contrary unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing the evidence for factual sufficiency, we consider and weigh all the evidence presented and will set aside the trial court's findings only if they are so contrary to the overwhelming weight of the evidence such that they are clearly wrong and unjust. *Id.* at 826; *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). When the evidence conflicts we must presume that the factfinder resolved any inconsistencies in favor of the order if a reasonable person could do so. *City of Keller*, 168 S.W.3d at 822.

5

The trial court is best able to "observe the demeanor and personalities of the witnesses and [to] 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *Echols*, 85 S.W.3d at 477. In an appeal from a bench trial, findings of fact are the equivalent of jury answers, and we cannot substitute our conclusions for those of the trial court if there is sufficient evidence to support the trial court's findings. *Id.* The trial court does not abuse its discretion if evidence of a substantive and probative character exists in support of its decision. *Zeifman*, 212 S.W.3d at 587.

**ANALYSIS**

In his first issue on appeal, Father asserts that "there was insufficient evidence upon which to determine that there had been a material and substantial change of circumstances regarding the parents or the child since the prior order." *See* Tex. Fam. Code § 156.101(a)(1).

The change-in-circumstances requirement is a threshold issue for the trial court and is based on a policy of preventing constant re-litigation with respect to children. *Zeifman*, 212 S.W.3d at 595. "The requirement of this showing 'serves a valid purpose of significantly limiting the trial judge's discretion and prevents the modification statute from being unconstitutionally broad.'" *Id.* (quoting *In re M.N.G.*, 113 S.W.3d 27, 34 (Tex. App.—Fort Worth 2003, no pet.)). In deciding whether circumstances have materially and substantially changed, the trial court is not confined to rigid rules or definite guidelines. *Id.* at 589; *see In re T.M.P.*, 417 S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.). Instead, the court's determination is fact-specific and must be made according to the circumstances of the case. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Zeifman*, 212 S.W.3d at 593). Material and

substantial changes may include: (1) the marriage of one of the parties; (2) poisoning of a child's mind by one of the parties; (3) a change in home surroundings; (4) mistreatment of a child by a parent or step-parent; and (5) a parent's becoming an improper person to exercise custody. *In re T.M.P.*, 417 S.W.3d at 564 (citing *In re A.L.E.*, 279 S.W.3d at 429).

Here, the trial court's "findings of fact" included the following:

1.  Father's home is less structured and not as stable as Mother's new home. Father's house has three bedrooms. Living with Father in his house were the twins who are the subject of this suit, his older son from another relationship, and an unrelated man who was Father's friend. At times, several days a week, another son by a third relationship stays with Father, and on occasion, the mother of one of the other children will stay overnight. . . .

. . .

7.  Mother acknowledged her drug use from several years before. She successfully completed treatment at a Community Correction Facility.

8.  Since the previous order, Mother has married. Her husband supports her relationship with her children and helps her care for them when the children are in Mother's possession. She and her husband live in a three bedroom house where the children have their own bedroom.

On appeal, Father does not specifically challenge the sufficiency of the evidence supporting these underlying fact findings. Instead, Father argues that these findings are insufficient to support the trial court's determination that a material and substantial change in circumstances has occurred since the prior order. According to Father, these findings are insufficient to demonstrate a "material and substantial change" because "no evidence was presented as to the difference between [Mother's residence when the 2014 order was signed] and the new husband's home or either's effect on the children." *See Trammel v. Trammel*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.]

7

2016, no pet.) (noting that court determining whether material and substantial change has occurred "should examine the circumstances of the child and parents at the time the prior decree was rendered, in relation to circumstances existing at the time modification of the prior order is sought"). We construe Father's argument to be that the trial court abused its discretion to the extent it found that these changes constitute "material and substantial" changes that justify a change in the terms of conservatorship.

The trial court's underlying fact findings numbers 1 and 8 concern the marital status of Mother as well as the current home surroundings of the parents and the children. Although little evidence was presented at the final hearing regarding the home surroundings of the children when the 2014 order was signed, Mother testified that at that time she was living in a community rehabilitation facility as part of the terms of her probation for a drug offense. The undisputed evidence also demonstrates that since the 2014 order giving Father the right to determine the children's primary residence, Mother has successfully completed her probation, started taking college classes, maintained her sobriety, married, and moved into a three-bedroom house with her new husband. This Court has previously concluded that a parent's change in marital status and residence supported a finding that there had been material and substantial change in circumstances when after the original decree, one of the parties planned to marry, began living with his significant other, quit his job to go back to school, and moved into a new neighborhood where the children started school. *Downey v. Downey*, No. 03-12-00037-CV, 2014 WL 1362642, at *4 (Tex. App.—Apr. 1, 2014, no pet.) (mem. op.) (citing *In re A.L.E.*, 279 S.W.3d at 428-29). Similarly, in this case, we conclude that the evidence demonstrates that since the 2014 order was signed Mother has established a stable home and entered into a stable, supportive marriage. Consequently, the trial

8

court's unchallenged fact findings, *see McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696-97 (Tex. 1986) (unchallenged findings of fact are binding on appellate court when supported by record), along with the evidence presented at the final hearing relevant to the issue of Mother's changed marital status and home surroundings, are sufficient to support the trial court's determination that a material and substantial change in circumstances relevant to the issue of the right to determine the children's residence had occurred. We overrule Father's first issue on appeal.

In his second issue on appeal, Father contends that the trial court abused its discretion in concluding that the modification of the conservatorship was in the best interest of the children. *See* Tex. Fam. Code § 156.101(a)(1). Trial courts generally have wide latitude in determining what is in a child's best interest, *Gillespie*, 644 S.W.2d at 451, and may use a non-exhaustive list of factors to aid in the determination, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the act or omissions of the parent. *Id*. These factors are not exhaustive, and no single factor is controlling. *See id*. at 372; *M.C. v. Texas Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied). The factfinder is not required to consider all of the factors, and the presence of a single factor may, in some instances, be adequate to support a best-interest finding. *M.C.*, 300 S.W.3d at 311.

9

Because there is no bright-line test for determining the best interest of the child, "a trial court's findings of fact and conclusions of law need not include a consideration of every factor." *Miller v. Miller*, No. 03-14-00603-CV, 2015 WL 6830754, at *5 (Tex. App.—Austin Nov. 4, 2015, no pet.) (mem. op.). Instead, we examine the record under an abuse-of-discretion standard to determine whether the trial court's decision has any reasonable basis in the evidence before it at trial, such that it could have reasonably concluded that a modification of the right to determine the children's primary residence was in the children's best interest. *Id.*

At the final hearing on Mother's petition to modify, the trial court heard that Mother has had problems with drug use in the past and that she was on probation for a 2012 drug offense until March of 2015. In the summer of 2015, Mother had a brief romantic relationship with Father and in September 2015, had a two-month romantic relationship with a man who was on parole for a drug offense. However, as previously discussed, evidence presented at the final hearing also establishes that Mother started attending college in January 2015 while working part time, met her current husband in March 2015, and has been in a stable, supportive marriage since May 2016. Mother lives with her husband in a three-bedroom house that is twenty minutes from the children's school and where each child has his own bedroom. In addition, Mother attends weekly private counseling sessions aimed at maintaining her sobriety and works part time in the mornings as a home-health attendant. The trial court also heard testimony demonstrating that Mother's new husband is supportive of Mother's efforts to maintain her sobriety, assists her with the children when they are in her care, and gets along with the children. Finally, several witnesses testified that Mother is a good mother who loves her children and is attentive to their needs.

10

The trial court also heard evidence about Father relevant to the issue of conservatorship and the right to determine the children's primary residence. The undisputed evidence presented at the hearing established that the children currently live with Father in a three-bedroom house, three minutes from the children's school, with a non-relative roommate and with Father's teenage son by a previous relationship, Gavin. In addition, Father's five-year-old son from a subsequent relationship stays at the house three or four days each week. The children share a room with their half-brother Gavin, with whom the children have a close relationship. Father is employed as a manager at a bar and restaurant in Abilene. While Father sets his own schedule and prioritizes his children's needs, he occasionally stays in Abilene overnight due to work obligations. Father sometimes relies on his sister Ana to help him with the children, including picking them up from school, watching them at her house, and, in the past, keeping them overnight. The trial court also heard from several witnesses, including Mother, who testified that Father is a good dad who cares about his children and enjoys spending time with them.

Conservatorship determinations are intensely fact driven, and the trial court is in the best position to judge the credibility of the witnesses and the weight to be given their testimony. Accordingly, as the reviewing court, we defer to the trial court's credibility determinations and resolution of underlying facts, and we will not substitute our judgment for that of the trial court, even if we would reach a different conclusion based on the evidence. *In re A.L.E.*, 279 S.W.3d at 427; *see Clemons v. Lynn*, No. 03-16-00360-CV, 2017 WL 1130382, at *4 (Tex. App.—Austin Mar. 22, 2017, no pet.) (mem. op.). Having reviewed the evidence under the appropriate standards, we conclude that there is sufficient evidence to support the trial court's finding that it was in the

11

children's best interest to give Mother, as joint managing conservator, the right to designate the children's residence.

Based on the evidence before it, the trial court had legally and factually sufficient information on which to exercise its discretion and did not err in the application of that discretion. *See Echols*, 85 S.W.3d at 476. The trial court did not abuse its discretion in concluding that modification of the terms of conservatorship was warranted. *See* Tex. Fam. Code § 156.101(a)(1). Father's second issue on appeal is overruled.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   September 7, 2018

12