**DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,**
Appellant,

v.

**ALTERNATIVES IN MOTION,**
Appellee.

**In re Department of Family and Protective Services, Relator.**

Nos. 01–06–00052–CV, 01–06–00092–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 14, 2006.

Rehearing Overruled Jan. 22, 2007.

Trey Picard, Assistant District Attorney, Angleton, TX, for Appellant.

Lester R. Buzbee III, Humble, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

In this termination of parental rights appeal and original proceeding, appellant, the Department of Family and Protective Services (DFPS), challenges an order granting summary judgment in favor of

appellee, Alternatives in Motion (AIM). In the appeal, appellate cause number 01–06–00092–CV, DFPS raises the following issues: (1) whether parents have a right to designate a party other than DFPS as the managing conservator of minor children by an affidavit of voluntary relinquishment, without the consent of DFPS, following DFPS's removal of the parents' children; (2) whether AIM, the licensed child-placing agency to which the parents relinquished the children, has standing to intervene in a suit filed by DFPS pursuant to chapters 262 and 263 of the Texas Family Code;[1] (3) whether a child's best interest overrides a conservatorship designation in a relinquishment affidavit; (4) whether AIM established its right to summary judgment; and (5) whether section 161.207 of the Family Code overrides the right of the parties to a jury trial on conservatorship.[2] DFPS also raises issues one and five in its original proceeding, appellate cause number 01–06–00052–CV.

In the original proceeding, we deny the relief requested in the petition for writ of mandamus.

In the appeal, we reverse and remand the cause.

### Background

On October 24, 2004, following a week-long psychotic episode, Dawn Rachille Mock (Mock) was found lying in a ditch expressing her desire to sacrifice herself and her male child to God. On October 25, 2004, DFPS took possession of Mock's and Robert Lee Brown's (Brown) children, B.L.B. and J.M.B. (the children), because of neglect at home and Mock's hearing voices telling her to kill the children. The following day, DFPS filed an original petition for conservatorship in a suit affecting the parent-child relationship (SAPCR), seeking to terminate the parental rights of Mock and Brown and to be named the sole managing conservator of the children. The trial court ordered that the children be placed in the temporary managing conservatorship of DFPS and ordered that the parents "are temporarily restrained and enjoined from disturbing, removing, or taking possession of the children. . . ." On October 26, 2004, Mock was involuntarily committed for psychiatric treatment at Austin State Hospital. The court appointed a guardian ad litem and an attorney for Mock at some point before November 2, 2004.

On November 2, 2004, the trial court made additional temporary orders. It appointed Brazoria County Children's Protective Services (hereinafter referred to as DFPS) as temporary managing conservator and appointed Mock and Brown as temporary possessory conservators of the children. Mock was discharged from Austin State Hospital in late December 2004.

On January 5, 2005, both parents signed "Affidavit[s] for Voluntary Relinquishment of Parental Rights" in favor of AIM, a licensed child-placing agency. On January 7, 2005, AIM intervened in the SAPCR filed by DFPS by filing a petition in intervention for conservatorship and termination of the parent-child relationship. As a basis for its request for conservatorship over the children, AIM attached the voluntary relinquishment affidavits from both

---

1. Chapter 262 of the Family Code governs "Procedures in Suit by Governmental Entity to Protect Health and Safety of Child." Chapter 263 of the Family Code governs "Review of Placement of Children Under Care of Department of Protective and Regulatory Services."

2. Section 161.207 of the Family Code governs the "Appointment of Managing Conservator on Termination." *See* TEX. FAM. CODE ANN. § 161.207 (Vernon 2002).

Mock and Brown, both of which designated AIM as managing conservator. On January 18, 2005, Mock filed a revocation of her affidavit relinquishing the children to AIM on the ground that she was "not capable of knowingly and willingly executing" it, as she had "recently been under psychiatric care and treatment." Mock also averred that she was "misled by the Intervenor and was coerced into signing the affidavit as the result of misrepresentations by the Intervenor, *i.e.*, AIM." Three days later, the trial court granted AIM's motion to dismiss its suit for conservatorship and termination of Mock's and Brown's parental rights.

On July 21, 2005, AIM again intervened in the termination and conservatorship proceedings, on the basis of a second set of affidavits of voluntary relinquishment executed by Mock and Brown on July 18. It filed a SAPCR against the State of Texas alleging the same grounds as in its previous intervention. On August 2, 2005, DFPS filed a motion to strike AIM's petition in intervention on the ground that AIM did not have standing to proceed against the State. On September 7, 2005, the trial court denied DFPS's motion. DFPS requested a jury trial on October 25, 2005.

On November 21, 2005, AIM moved for summary judgment, seeking termination of the parent-child relationship as to Mock and Brown and seeking to be appointed managing conservator of the children. After a hearing, the trial court entered a final summary judgment on January 3, 2006, terminating the parent's rights and naming AIM as the permanent managing conservator of the children. DFPS appeals from this judgment.[3] In addition to the appeal, DFPS filed a petition for writ

of mandamus, a writ of prohibition, and an emergency motion for temporary relief, asking this Court to suspend enforcement of the trial court's judgment giving AIM possession of the children. On January 19, 2006, we granted DFPS's motion for temporary relief.

## Summary Judgment

### *Standard of Review*

Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that judgment should be granted as a matter of law. Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). To the extent the issue presented in this appeal involves statutory construction and the application of a statute to undisputed facts, we determine the issues as a matter of law. *Gramercy Ins. Co. v. Auction Fin. Program, Inc.*, 52 S.W.3d 360, 363 (Tex.App.-Dallas 2001, pet. denied) (citing *McCreight v. City of Cleburne*, 940 S.W.2d 285, 288 (Tex. App.-Waco 1997, writ denied)).

## Standing of Party Designated in Affidavit of Relinquishment of Parental Rights to Intervene in Termination and Conservatorship Proceedings

In its first issue on appeal, DFPS argues that after the trial court appointed it as the temporary managing conservator of the children the parents could not appoint a managing conservator via an affidavit of relinquishment. DFPS relies on the trial court's temporary orders that restricted the rights of the parents. Specifically, the parents no longer had the right to "represent the children in legal action and to

---

**3.** Neither of the parties complains about the part of the trial court's judgment that termi-

nated the rights of the parents.

make other decisions of substantial legal significance concerning the children." TEX. FAM.CODE ANN. § 153.371(8) (Vernon Supp.2006). In its second issue, DFPS challenges AIM's standing to intervene on the basis of the parents' affidavits of relinquishment in DFPS's suit for termination of parental rights and SAPCR. Because these issues both go to AIM's standing to intervene in the lawsuit, we consider them together.

Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law. *Tex. Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993); *In the Interest of SSJ–J*, 153 S.W.3d 132, 134 (Tex.App.-San Antonio 2004, no pet.) (standing is necessary prerequisite to trial court's exercise of subject matter jurisdiction in SAPCR seeking managing conservatorship). Thus, AIM's standing to maintain its claims is a threshold issue. *See In the Interest of Pringle*, 862 S.W.2d 722, 724 (Tex.App.-Tyler 1993, no writ); *In the Interest of SSJ–J*, 153 S.W.3d at 134. The burden of proof on the issue of standing to initiate a SAPCR seeking managing conservatorship is on the petitioner. *Pringle*, 862 S.W.2d at 725. The petitioner must prove its standing by a preponderance of the evidence. *Id.* The standard of review applicable to subject matter jurisdiction also applies to standing. *Texas Ass'n of Bus.*, 852 S.W.2d at 446. Under this standard, the pleader must allege facts affirmatively demonstrating the court's jurisdiction to hear the case. *Id.* On appellate review, we construe the pleadings in favor of the plaintiff and look to the pleader's intent. *Id.* A party's standing to pursue a cause of action is a question of law. *Coons–Andersen v. Andersen*, 104 S.W.3d 630, 634 (Tex.App.-Dallas 2003, no pet.).

Section 102.003 of the Family Code sets out the general standing requirements for filing a SAPCR. *See* TEX. FAM.CODE ANN. § 102.003. Section 102.003(a)(7) states that an original SAPCR may be filed at any time by "a licensed child placing agency." TEX. FAM.CODE ANN. § 102.003(a)(7) (Vernon Supp.2006). Subsection (a)(10) states that an original suit may be filed at any time by "a person designated as the managing conservator in a revoked or unrevoked affidavit of relinquishment under Chapter 161 or to whom consent to adoption has been given in writing under Chapter 162." *Id.* § 102.003(a)(10) (Vernon Supp.2006).

It is undisputed that AIM is a licensed child-placing agency. However, to maintain a SAPCR, a party must show not only that it has general standing but that it has a justiciable interest in the matter before the court. *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex.1982). Once a motion to strike has been filed, the burden shifts to the intervenor to show a justiciable interest in the lawsuit. *Jabri v. Alsayyed*, 145 S.W.3d 660, 671–72 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Mendez*, 626 S.W.2d at 499. A party has a justiciable interest in a suit, and thus a right to intervene, when its interests will be affected by the litigation. *Jabri*, 145 S.W.3d at 671–72; *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 71 (Tex.App.-Fort Worth 2003, no pet.).

AIM relies upon the affidavits of relinquishment filed by Mock and Brown to establish its justiciable interest in the instant litigation. DFPS contends that neither parent had the legal right to sign an affidavit of relinquishment designating AIM as the managing conservator of the children on July 18, 2005, because DFPS had already been named managing conservator by the trial court with the right to represent the children in legal actions and

to make other decisions of substantial legal significance concerning the children. Thus, DFPS argues that the affidavits of relinquishment are invalid and will not support the trial court's implied finding in support of its judgment that AIM has a justiciable interest in this suit.[4]

The right to relinquish parental rights voluntarily and to designate a managing conservator is given exclusively to parents pursuant to sections 153.374 and 161.103 of the Family Code. *See* TEX. FAM.CODE ANN. § 153.374 (Vernon 2002), § 161.103 (Vernon Supp.2006). Section 153.374 states that:

> (a) A parent may designate a competent person, authorized agency, or licensed child-placing agency to serve as managing conservator of the child in an unrevoked or irrevocable affidavit of relinquishment of parental rights executed as provided by Chapter 161.
>
> (b) The person or agency designated to serve as managing conservator shall be appointed managing conservator unless the court finds that the appointment would not be in the best interest of the child.

TEX. FAM.CODE ANN. § 153.374(a), (b) (Vernon 2002). Section 161.103 states that an affidavit of voluntary relinquishment of parental rights must contain, among other things:

> (12) the designation of a prospective adoptive parent, the Department of Protective and Regulatory Services, if the department has consented in writing to the designation, or a licensed child-placing agency to serve as managing conservator of

the child and the address of the person or agency.

TEX. FAM.CODE ANN. § 161.103(b)(12) (Vernon Supp.2006). Section 161.104 provides that "a person, licensed child-placing agency, or authorized agency designated managing conservator of a child in an irrevocable or unrevoked affidavit of relinquishment has a right to possession of the child superior to the right of the person executing the affidavit" and the rights and duties of a possessory conservator "until such time as those rights and duties are modified or terminated by court order." TEX. FAM.CODE ANN. § 161.104 (Vernon 2002).

Independently, section 105.001 of the Family Code allows a trial court to make a temporary order for the conservatorship of children for their safety and welfare. TEX. FAM.CODE ANN. § 105.001 (Vernon Supp. 2006). Thus, here, on October 26, 2004, before the parents signed affidavits of relinquishment, the trial court ordered that DFPS serve as the temporary conservator of the children until further orders of the court. The order also provided that "[DFPS] is authorized to consent to such medical, surgical, or psychological care as may be required by the children." The court's order further stated that the parents were "temporarily restrained and enjoined from disturbing, removing, or taking possession of the children."

On November 2, 2004, the trial court entered additional orders that DFPS has the "rights, privileges, duties and powers as set forth in Section 153.371 of the Texas Family Code...." The court gave DFPS "the right to represent the children in legal action and to make other decisions of

---

4. DFPS contended in its motion to strike, in its response to AIM's motion for summary judgment, and in its subsequent plea to the jurisdiction that Mock's affidavit was obtained by coercion and without notice either to the

ad litem or to the attorney appointed by the court to represent Mock's interests and that it was, therefore, invalid and did not support AIM's intervention. DFPS does not make these arguments on appeal.

substantial legal significance concerning the children." TEX. FAM.CODE ANN. § 153.371(8) (Vernon Supp.2006). The trial court further ordered that the parents were to be temporary possessory conservators with the rights, privileges, duties and powers of possessory conservators set forth in section 153.074 of the Code. *See* TEX. FAM.CODE ANN. § 153.074 (Vernon Supp.2006).[5] Such temporary orders are valid and enforceable until properly superseded by a court with jurisdiction to do so. TEX. FAM.CODE ANN. § 262.204 (Vernon 2002). Thus, this case requires us to determine whether a trial court's temporary orders can preclude a parent from voluntarily relinquishing parental rights and designating a managing conservator pursuant to section 153.374 when DFPS has brought suit to terminate the parents' parental rights. Because the Family Code does not address this situation, we analyze the issue under the proper rules of statutory interpretation.

Statutory interpretation is a question of law. *In re Canales*, 52 S.W.3d 698, 701 (Tex.2001). Our primary goal is to ascertain and effectuate the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999). In doing so, we begin with the statute's plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex.

1999). To ascertain legislative intent, however, we must look to the statute as a whole and not to its isolated provisions. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985); *Tex. Dep't of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 283 (Tex.App.-Austin 2000, pet. denied). In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex.2001). We may also consider, among other things, the statute's objectives; common law, former law, and similar provisions; and the consequences of the statutory construction. TEX. GOV'T CODE ANN. § 311.023(1)-(7) (Vernon 1998); *Canales*, 52 S.W.3d at 702.

It is a well-settled rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. *In re Bell*, 91 S.W.3d 784, 790 (Tex.2002) (quoting *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981)). Likewise, every word excluded from a statute must also be presumed to have been excluded for a purpose. *Id.* This rule complements another general statutory construction principle that courts should not insert words into a statute except to give effect to clear legislative intent. *Id.* (citing *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex.1995)). A court of appeals should presume the legislature intended a

---

**5.** The parents were given the following rights:

  (1) the duty of care, control, protection, and reasonable discipline of the children during periods of possession.

  (2) the duty to support the children including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure during periods of possession;

  (3) the right to consent for the children to medical and dental care not involving an

invasive procedure during periods of possession;

  (4) the right to consent for the children to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the children during periods of possession; and

  (5) the right to direct the moral and religious training of the children during periods of possession.

just and reasonable result in enacting a statute. *In re D.R.L.M.*, 84 S.W.3d 281, 290 (Tex.App.-Fort Worth 2002, pet. denied). It should not construe a statute in a manner that will lead to a foolish or absurd result when another alternative is available. *Id.*

We observe, first, that neither section 153.374 nor section 161.103 of the Family Code places any temporal restriction on the right of parents to relinquish their parental rights voluntarily and to designate a managing conservator. Moreover, although no Texas case appears to have analyzed the issue of whether a parent who has lost managing conservatorship of a child can subsequently sign an affidavit of relinquishment designating a managing conservator, we have found several cases in which such an affidavit was signed after the parents had lost managing conservatorship, thereby implying that parents do retain the right to sign an affidavit of relinquishment. *See Wall v. Texas Dept. of Family and Protective Servs.*, 173 S.W.3d 178, 181 (Tex.App.-Austin 2005, no pet.); *In re J.R.P.*, 55 S.W.3d 147, 149 (Tex.App.-Corpus Christi 2001, pet. denied). Here, at the time that the parents executed the affidavits of voluntary relinquishment, the trial court had only taken away their rights as managing conservators. The parents still retained possessory conservator rights.

In light of the Family Code's clear intent to give parents the right to designate a managing conservator for their children upon voluntarily relinquishing their parental rights and the absence of any temporal restriction on this right, we conclude that the right survives a trial court's temporary orders naming DFPS managing conservator in a suit brought by the State to terminate parental rights. Here, however, the parents had been removed as managing conservators pending a hearing on involun-

tary termination of their parental rights. Thus, their affidavits that designated AIM as managing conservator served only to transfer those rights the parents still possessed—in this instance, only possessory rights. When a valid affidavit of relinquishment designates a licensed child-placement agency as managing conservator of a child, the agency automatically has a statutory right of possession superior to the person who signed the affidavit and the rights and duties of a possessory conservator until modified by the court. *See* TEX. FAM.CODE ANN. § 161.104. Therefore, we hold that upon the execution of Brown's and Mock's affidavits that designated AIM as managing conservators of B.L.B. and J.M.B., AIM assumed the rights and duties of a possessory conservator of B.L.B. and J.M.B. with rights superior to Mock's and Brown's until such time as AIM's rights and duties were modified by court order. *See id.* We further hold that AIM established its right to intervene in the SAPCR to seek termination of Mock's and Brown's parental rights and appointment as managing conservator of B.L.B. and J.M.B. by virtue of the affidavits of relinquishment. *See* TEX. FAM.CODE ANN. § 102.003(a)(10).

We overrule DFPS's first and second issues on appeal.

### Appointment of Managing Conservator in Suit for Conservatorship of a Child

In its third issue on appeal, DFPS contends that, in the court's appointment of a managing conservator, the children's best interest controls over a conservatorship designation in a relinquishment affidavit, and, in its fourth issue on appeal, DFPS argues that AIM was not entitled to summary judgment because "[AIM] did not present any evidence that its appoint-

ment as managing conservator was in the children's best interest."

DFPS relies on section 153.374(b) of the Family Code, which provides that a parent may designate a competent person, authorized agency or licensed child-placing agency to serve as managing conservator of a child in an unrevoked or irrevocable affidavit of relinquishment and that "[t]he person or agency designated to serve as managing conservator shall be appointed managing conservator unless the court finds that the appointment would not be in the best interest of the child." TEX. FAM. CODE ANN. § 153.374. DFPS also relies on section 153.002 of the Family Code, which states, "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM.CODE ANN. § 153.002; *see also In re K.R.P.*, 80 S.W.3d 669, 674 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *In the Interest of D.R.L.M.*, 84 S.W.3d 281, 300 (Tex.App.-Fort Worth 2002, pet. denied). Chapter 153 of the Family Code governs SAPCR's affecting conservatorship, possession, and access to a child.

AIM relies on Section 161.207 of the Family Code as authority for its position that the court must automatically appoint it managing conservator in order to carry out the wishes of the parents whose rights were voluntarily terminated. Section 161.207 provides in pertinent part,

(a) If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Protective and Regulatory Services, a licensed child-placing agency, or an authorized agency as managing conservator of the child. *An agency designated managing conservator in an unrevoked or irrevocable*

*affidavit of relinquishment shall be appointed managing conservator.*

TEX. FAM.CODE ANN. § 161.207(a) (Vernon 2002) (emphasis added). Section 161.207 makes no reference to the best interest of the child or children for whom the managing conservator is appointed. *See id.* However, section 161.207 does not govern conservatorship, possession, or access to a child, but termination proceedings.

We disagree with AIM's argument that because the parents designated it as managing conservator in their affidavits of relinquishment of parental rights under Chapter 161 of the Family Code, the trial court was required automatically to name AIM as managing conservator in the SAPCR under Chapter 153 of the Family Code without inquiry into the best interest of the children. Section 153.374 governs appointment of a managing conservator in matters of "conservatorship, possession, and access," which is the title and subject matter of Chapter 153. Section 153.374 clearly provides that in appointing a managing conservator in such cases, the trial court need not comply with the parent's designation of a managing conservator if the designation is not in the children's best interest. *See* TEX. FAM.CODE ANN. § 153.374(b).

■ The overriding policy of Chapter 153 is the best interest of the child. *See* TEX. FAM.CODE ANN. § 153.002; *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex.2001); TEX. GOV'T CODE ANN. § 311.023(1)-(7) (Vernon 1998); *Canales*, 52 S.W.3d at 702. Two statutes express this policy; first, section 153.002 expressly states that the best interest of the child is the overriding concern for the courts. *See* TEX. FAM.CODE ANN. § 153.002. Second, section 153.374 states that "the trial court shall appoint the designated person or licensed child placing agency in an affidavit of relinquishment *unless* the appointment

of such person is not in the best interest of the child." *See* TEX. FAM.CODE ANN. § 153.374 (emphasis added). Because the best interest of the child must be considered, we conclude that while appointment of a party designated in an affidavit of relinquishment in place of the parent whose rights are voluntarily terminated is automatic for the purpose of termination proceedings, appointment of that party as managing conservator in a suit to determine conservatorship of the child is subject to proof that the appointment is in the child's best interest.[6] *See In the Interest of D.R.L.M.*, 84 S.W.3d at 300 ("The statute nowhere requires the trial court to abide by the parent's choice of a managing conservator expressed in the relinquishment affidavit.").

In determining that the appointment of a party as managing conservator is in the best interest of a child in a termination of parental rights case where, as here, the children are in the custody of DFPS, the court must consider not only the factors set out by the supreme court in *Holley v. Adams*, 544 S.W.2d 367 (Tex.1976), but also the factors set out in section 263.307 of the Family Code. *See* TEX. FAM.CODE ANN. § 263.307 (Vernon 2002) (listing "factors in determining best interest of child" in review of placement of children under care of DFPS); *Corrales v. DFPS*, 155 S.W.3d 478, 489–90 (Tex.App.-El Paso 2004, no pet.) (listing *Holley* factors and observing that "[I]n 1993 the Legislature codified *Holley*, [in section 263.307] incorporating additional factors for the court to

consider when reviewing placement of children under care of [TDFPS]"); *In the Interest of J.R.P., M.C., and R.P, Jr.*, 55 S.W.3d 147, 151–52 (Tex.App.-Corpus Christi 2001, pet. denied).

At the summary judgment hearing, Mock's guardian ad litem expressed the viewpoint that Mock's parental rights should be terminated and stated, "I have never seen one bit of proof that there's a problem with this agency." Likewise, Mock's attorney reported that Mock knew the people at AIM and "would like the children to be placed with them." However, the trial court heard no evidence regarding the best interest of the children, under any of the *Holley* factors or the factors listed in section 263.307. Accordingly, we conclude that the trial court improperly granted AIM's motion for summary judgment.

We sustain DFPS's fourth issue on appeal.[7]

Because we resolve DFPS's fourth issue on appeal in its favor, it is not necessary for us to reach the merits of its fifth issue on appeal, whether section 161.207 of the Family Code overrides the right of the parties to a jury trial on conservatorship. *See* TEX.R.APP. P. 47.1.

## Conclusion

We reverse the judgment of the trial court and remand the cause for further proceedings in accordance with this opinion. We withdraw our January 19, 2006

---

**6.** Although the issue is not dispositive, we sustain DFPS's third issue on appeal-that an affidavit of voluntary relinquishment and designation of managing conservator can be overridden by the best interest of the children. *See* TEX FAM.CODE ANN. § 153.374(b); *In the Interest of D.R.L.M.*, 84 S.W.3d 281, 300 (Tex. App.-Fort Worth 2002, pet. denied).

**7.** In its original proceeding, DFPS raises two issues that are substantially similar to the issues raised in its appeal. Because DFPS has an adequate remedy by appeal, we conclude that DFPS is not entitled to proceed with its petition for writ of mandamus. Accordingly, we deny DFPS's petition for writ of mandamus. *See* TEX.R.APP. P. 52.8(a). DFPS's writ of prohibition is likewise denied. *See id.*

order that suspended enforcement of the judgment of the trial court.