

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00071-CV

_____

### IN THE INTEREST OF A.B.O. AND E.B.O., CHILDREN

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 72199

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

In this dispute involving the conservatorship of two children, the trial court appointed their father, David Brian O'Dell (David), and maternal grandmother, Melanie McMurtry, as joint managing conservators. The trial court further designated McMurtry as the person with the right to designate the children's place of residence. David appeals, contending that the trial court erred in (1) finding that McMurtry had standing to assume joint conservatorship, (2) appointing McMurtry as the conservator with the exclusive right to determine the children's primary residence, in violation of David's constitutional rights, (3) concluding that McMurtry overcame the presumption that a fit parent acts in the best interests of his children, (4) concluding that McMurtry proved that appointment of David as sole managing conservator would significantly impair the children's physical health or emotional development, (5) concluding that McMurtry's appointment as managing conservator with the exclusive right to determine the children's residence was in the children's best interests, (6) making certain findings of fact that were not supported by legally or factually sufficient evidence, and (7) entering judgment based on unsupported factual findings. Because we conclude that the trial court appropriately exercised its discretion in accordance with Section 156.101 of the Texas Family Code in naming McMurtry as the children's managing conservator with the right to determine their residence, we affirm the judgment of the trial court.

## I.    Background

When David and Alisa Jene O'Dell (Jene) were divorced in August 2004, both were designated as joint managing conservators of their two children, A.B.O. and E.B.O. (the children). Jene was granted the exclusive right to designate the children's primary residence.

Following an investigation by Child Protective Services (CPS) in November 2012 of reported concerns that Jene was using drugs, McMurtry filed a petition in intervention asking that she be appointed as the children's sole managing conservator.[1]  McMurtry claimed that continued appointment of the parents as joint managing conservators would not be in the best interests of the children because the appointment would significantly impair the children's physical health or emotional development.  David filed a motion to deny McMurtry's requested relief and filed a counter-petition seeking to modify the parent-child relationship, asking that he be appointed the conservator with the right to designate the children's primary residence.  Both McMurtry and David agreed that Jene should not have custody and should only have supervised visitation.

The trial court thereafter issued temporary orders appointing McMurtry and David as the children's joint temporary managing conservators and Jene as their temporary possessory conservator.  The court also gave McMurtry the exclusive right to designate the children's primary residence.  After a final hearing in April 2014, the trial court appointed McMurtry and David as joint managing conservators and gave McMurtry the right to designate the children's primary residence in Lamar County or counties contiguous thereto.  Jene was appointed possessory conservator of the children as supervised by McMurtry.  David was ordered to pay child support.

---

[1]After learning that McMurtry filed for custody, CPS took no further action in the case.

## II.      Standing

We initially address the issue of McMurtry's standing to seek custody of the children under Sections 102.003 and 102.004 of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 102.003– .004 (West 2014). "Standing is implicit in the concept of subject matter jurisdiction; as such, it is never presumed and cannot be conferred by waiver or estoppel." *In re M.T.C.*, 299 S.W.3d 474, 479 (Tex. App.—Texarkana 2009, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993); *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, no pet.)). In reviewing a trial court's determination of a party's standing to seek possession or custody of minor children, we construe the pleadings in favor of the petitioner and look to the pleader's intent. *M.T.C.*, 299 S.W.3d at 479. "We review de novo the issue about standing." *Id.*

"When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis." *Everett v. TK–Taito, L.L.C.*, 178 S.W.3d 844, 851 (Tex. App.—Fort Worth 2005, no pet.); *see Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001). "In the context of a suit affecting the parent-child relationship, standing is governed by the Texas Family Code, and '[t]he party seeking relief must allege and establish standing within the parameters of the language used in the statute.'" *In re S.M.D.*, 329 S.W.3d 8, 12–13 (Tex. App.—San Antonio 2010, pet. dism'd) (quoting *H.G.*, 267 S.W.3d at 124); *see M.T.C.*, 299 S.W.3d at 480.

McMurtry contends her standing to file suit was established pursuant to Sections 102.003(a)(9) and 102.004(a)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 102.003(a)(9), 102.004(a)(1). Section 102.003 of the Family Code sets out the general

requirements for filing a suit affecting the parent-child relationship (SAPCR).  Section 102.003(a)(9) of the Family Code states that an original SAPCR "may be filed at any time by . . . a person . . . who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition."  TEX. FAM. CODE ANN. § 102.003(a)(9).  In its findings of fact, the trial court found that McMurtry "had actual exclusive care, control[,] and possession of the subject children for more than six months prior to filing her intervention."  The trial court further concluded that McMurtry had standing to bring suit.

Although Jene was designated as the managing conservator with the right to determine the children's primary residence in the divorce decree, the children did not always reside with her. Jene frequently lived with her boyfriend, Ron Wiggins, but she would leave when the two fought. Between 2004 and 2007, the children typically stayed with McMurtry two to three nights a week. In January 2008, Jene's relationship with Wiggins became volatile, and Jene was in and out of Wiggins' home.  The children lived with McMurtry off and on during these times when Jene and Wiggins quarreled.

By 2010, Jene was living with a different man, and the children were living with McMurtry. In late 2011, the children returned to their mother for three or four months, and by February 2012, the children returned to McMurtry's home.  On April 7, 2012, Jene, who had since reunited with Wiggins, again moved out of Wiggins' home and, shortly thereafter, took up residence with a different man.  McMurtry testified that the children lived with her continuously from April 7, 2012, until the petition was filed on December 3, 2012.  Although one of the girls visited Jene a few

5

times during this timeframe, the children always resided with McMurtry. David acknowledged that the children lived with McMurtry from March 2012 through November 2012.

This testimony establishes, by a preponderance of the evidence, that McMurtry had "actual care, control, and possession of the [children] for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(9); *see Dep't of Fam. & Protective Servs. v. Alternatives in Motion*, 210 S.W.3d 794, 799 (Tex. App.—Houston [1st Dist.] 2006, (2) pets. denied) (petitioner in SAPCR must prove standing by preponderance of evidence).[2] We, therefore, conclude that based on the record, McMurtry established standing.

## III.    Analysis

### A.    Parental Presumption Does Not Apply to this Modification Proceeding

Three of David's complaints are premised on the assertion that he was entitled to a presumption in favor of biological parents—as opposed to third parties—in the conservatorship determination. David's entitlement to the benefit of this presumption depends on whether McMurtry's action in the trial court was an original proceeding, governed by Chapter 153 of the Texas Family Code, or a modification proceeding, governed by Chapter 156 of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 153.001–.709, 156.001–.409 (West 2014). The parental presumption in Chapter 153 of the Texas Family Code applies only to original suits and states that

> unless the court finds that the appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair

---

[2]Given McMurtry's standing under Section 102.003(a)(9), she also had standing to file a modification petition. *See* TEX. FAM. CODE ANN. § 156.002(b) (West 2014) (stating person or entity who, at time of filing, has standing to sue under Chapter 102 may file suit for modification in court with continuing, exclusive jurisdiction). Because we find that McMurtry had standing to bring her SAPCR in accord with Section 102.003(a)(9), we need not address the issue of whether she likewise proved standing pursuant to Section 102.004(a)(1). *See* TEX. FAM. CODE ANN. § 102.004(a)(1).

> the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

TEX. FAM. CODE ANN. § 153.131. This presumption does not, however, apply to modifications. *See In re V.L.K.*, 24 S.W.3d 338, 342–43 (Tex. 2000); *In re Guardianship of C.E.M.-K.*, 341 S.W.3d 68, 79 (Tex. App.—San Antonio 2011, pet. denied) (any subsequent custody proceeding after original determination of conservatorship is modification and parental presumption does not apply); *In re R.T.K.*, 324 S.W.3d 896, 900–01 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *In re P.D.M.*, 117 S.W.3d 453, 457–58 (Tex. App.—Fort Worth 2003, pet. denied) (parental presumption does not apply to any subsequent custody proceeding regardless of parties involved) (citing *V.L.K.*, 24 S.W.3d at 343); *see also In re M.N.G.*, 113 S.W.3d 27, 31–32 (Tex. App.—Fort Worth 2003, no pet.) (parental presumption does not apply even when modification proceedings pit parent against nonparent).

David, seeking the benefit of the presumption, contends that *Troxel v. Granville*, 530 U.S. 57 (2000), stands for the proposition that a parent is always entitled to the parental presumption when a nonparent seeks conservatorship. David further contends that he is entitled to the parental presumption, under Section 153.433 of the Texas Family Code (the Grandparent Access Statute). *See* TEX. FAM. CODE ANN. § 153.433. Conversely, McMurtry contends that because this is a petition seeking modification of a previous order that specified conservatorship, not an original suit pertaining to rights generally determined by parents, David is not entitled to the parental presumption. We agree with McMurtry. In *Troxel*, the United States Supreme Court once again recognized the very strong protections afforded to the parent-child relationship by the Due Process

7

Clause of the United States Constitution and found that "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68–69. However, once courts have been asked to intervene to establish legal relationships involving children, the decision in *Troxel* does not bar the courts from modifying those relationships. "After a court makes an original custody determination, a party may move to modify that determination." *V.L.K.*, 24 S.W.3d at 342 (citing TEX. FAM. CODE ANN. § 156.002). Consequently, "once custody . . . is established by court order, the parental presumption does not apply to any subsequent custody proceeding regardless of the parties involved." *P.D.M.*, 117 S.W.3d at 457–58. Because an original custody determination as to conservatorship of the children was made by the County Court at Law of Lamar County in the 2004 divorce decree, the underlying trial court proceeding was necessarily a proceeding to modify that original custody determination. This conclusion is based on the Texas Supreme Court's opinion in *V.L.K.*, the subsequent interpretation of that opinion, and the language in the Texas Family Code. *See V.L.K.*, 24 S.W.3d at 342–43; *P.D.M.*, 117 S.W.3d at 457–58; *see also* TEX. FAM. CODE ANN. § 156.002.

Although "[t]he presumption that the best interest of the child is served by awarding custody to the parent is deeply embedded in Texas law," the presumption, codified in Section 153.131, only applies in original proceedings. *V.L.K.*, 24 S.W.3d at 341, 342–43. In so holding, the high court recognized "the policy concern that [the] trial court should not change custody unless it is a positive improvement because of the child's need for stability." *Id.* at 343.

8

Accordingly, "'[b]ecause a change of custody disrupts the child's living arrangements and the channels of a child's affection, a change should be ordered only when the trial court is convinced that the change is to be a positive improvement for the child.'" *Id.* (quoting *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955)). By including the parental presumption in original suits, but not in suits for modification of conservatorship,

> the Legislature balanced the rights of the parent and the best interest of the child. On one hand, "the interest of parents in the care, custody, and control of their children" has been described as "perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (plurality op.) (citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 262 U.S. 390, [sic] 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). On the other hand, it is the public policy of this State to resolve conservatorship disputes in a manner that provides a safe, *stable*, and nonviolent environment for the child. TEX. FAM. CODE ANN. § 153.001(a)(2) (Vernon 2002) (emphasis added).
>
> The Legislature has determined that when these two interests compete[,] . . . the child's interest in stability prevails over the parent's right to primary possession. Thus, when statutory requirements are met, the parent's right to primary possession must yield to the child's right to a safe, stable home.

*In re C.A.M.M.*, 243 S.W.3d 211, 216 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citation omitted).

Because this case involves a modification of conservatorship, rather than an original suit affecting the parent-child relationship, David was not entitled to the benefit of the parental presumption.

9

David contends, though, that both the holding in *Troxel*, 530 U.S. 57, and Section 153.433(2) of the Texas Family Code require imposition of the parental presumption.[3] We disagree. *Troxel* was a grandparent visitation case in which the United States Supreme Court declared a Washington State non-parental visitation statute unconstitutional as applied. *Id.* at 73. The Court found that the trial court failed to accord proper weight to decisions made by a fit custodial parent. *Id.* at 72. The Court focused on the fact that the mother's fitness as a parent was never questioned, yet, no special weight was placed on her decision to limit grandparent visitation. *Id.* at 68–69. The United States Supreme Court expressly did not consider whether due process

---

[3]As a result of the *Troxel* opinion, Section 153.433 of the Texas Family Code was amended to allow reasonable possession of or access to a grandchild only if:

       (1)     at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;

       (2)     the grandparent requesting possession of or access to the child has overcome the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and

       (3)     the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:

          (A)     has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;

          (B)     has been found by a court to be incompetent;

          (C)     is dead; or

          (D)     does not have actual or court-ordered possession of or access to the child.

TEX. FAM. CODE ANN. § 153.433. McMurtry's suit was not brought pursuant to the Grandparent Access Statute. The petition did not allege entitlement to possession of or access to the children in accord with this statute, and the final order did not indicate the petition was granted in accord with the terms of this statute. Instead, McMurtry sought modification of the original custody determination regarding the children.

10

requires a showing of harm or potential harm to the child before granting visitation and did not define the precise scope of the parental due process right. *Id*. at 73.[4]

The purposes of a non-parental visitation statute, as explained by Justice O'Connor, presumes fitness of the custodial parent. *See id*. at 72. Conversely, "[t]he purposes of the Texas modification statute are entirely different from a visitation statute, and the modification statute does not presume fitness of the custodial parent." *In re M.N.G.*, 113 S.W.3d 27, 33 (Tex. App.—Fort Worth 2003, no pet.). Additionally, *Troxel* "does not support the trial court's placing of the burden on [the grandparent] to show unfitness of [the parent] or harm or potential harm to the child as predicates for modification." *Id*. As the Austin court observed in *Zeifman v. Michels*,

> The policy behind the requirement of a material and substantial change is to prevent constant relitigation with respect to children. *M.N.G.* 113 S.W. 3d at 33; *Watts v. Watts*, 563 S.W.2d 314, 316 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.) (requirement of material and substantial change predicated upon doctrine of res judicata as to best interest of child at time of original decree awarding conservatorship).

*Zeifman v. Michels*, 212 S.W.3d 582, 595 (Tex. App.—Austin 2006, pet. denied). The required showing of a material and substantial change in circumstances "serves a valid purpose of

---

[4]David further contends that the parental presumption discussed in *Troxel* applies to the present case, in reliance on *Svoboda v. Svoboda*, No. 03-09-00189-CV, 2009 WL 3151336, at *1 (Tex. App.—Austin Oct. 1, 2009, no pet.) (mem. op.). *Svoboda*, however, involved a petition for grandparent possession and access brought pursuant to Section 153.433 of the Family Code, governing possession of or access to grandchildren. *See* TEX. FAM. CODE ANN. § 153.433. That Section of the Code does require that a grandparent seeking court-ordered possession or access must overcome the presumption that a parent acts in his child's best interest. The present case does not implicate the provisions of the Grandparent Access Statute. Further, to the extent David contends that a grandparent's failure to overcome the parental presumption to prove standing constitutes a violation of that parent's constitutional rights, we disagree. First, McMurtry proved standing in compliance with Section 102.003(a)(9). *See* TEX. FAM. CODE ANN. § 102.003(a)(9). Second, the Texas Supreme Court has determined that standing is determined without reliance on the parental presumption. *Shook v. Gray*, 381 S.W.3d 540, 543 (Tex. 2012) (per curiam).

11

significantly limiting the trial judge's discretion and prevents the modification statute from being unconstitutionally broad." *M.N.G.*, 113 S.W.3d at 34.

Accordingly, we overrule each of David's points of error premised on either his purported entitlement to the parental-fitness presumption or on McMurtry's purported failure to rebut this presumption.[5]

### B. Standard of Review

"We review a trial court's decision regarding custody, control, and possession matters involving a child under an abuse of discretion standard." *In re A.L.W.*, 356 S.W.3d 564, 566 (Tex. App.—Texarkana 2011, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)); *see In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.). "A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles." *A.L.W.*, 356 S.W.3d at 566 (citing *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam); *Holtzman v. Holtzman*, 993 S.W.2d 729, 734 (Tex. App.—Texarkana 1999, pet. denied)).

"Under the abuse-of-discretion standard, alleged legal insufficiency and factual insufficiency of the evidence are not independent grounds of error, but are merely factors in assessing whether the trial court abused its discretion." *In re S.A.E.*, No. 06-08-00139-CV, 2009 WL 2060087, at *2 (Tex. App.—Texarkana July 17, 2009, no pet.) (mem. op.); *see P.M.G.*, 405

---

[5]These points of error include point of error number one (alleging trial court error in application of modification and conservatorship statutes in manner that violated David's constitutional rights as a parent), point of error number three (alleging trial court error in concluding that McMurtry overcame the parental presumption), and point of error number four (alleging trial court error in concluding that naming David as sole managing conservator or to have both parents as joint managing conservators would significantly impair the children's physical health or emotional development).

12

S.W.3d at 410. "Where a sufficiency review 'overlaps the abuse of discretion standard[,] . . . we engage in a two-pronged inquiry.'" *In re C.R.J.*, No. 06-13-00053-CV, 2014 WL 199209, at \*4 (Tex. App.—Texarkana Jan. 17, 2014, no pet.) (mem. op.) (quoting *S.A.E.*, 2009 WL 2060087, at \*2). "[W]e ask if the trial court had sufficient information on which to exercise its discretion and whether it erred in its application of that discretion." *S.A.E.*, 2009 WL 2060087, at \*2 (citing *Giron v. Gonzalez*, 247 S.W.3d 302, 306 (Tex. App.—El Paso 2007, no pet.)).

Because David did not bear the burden of proof at trial, we analyze the legal sufficiency issue as a "no-evidence" challenge. *See Giron*, 247 S.W.3d at 306 (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). "We must view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001) (citing *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex. 1992)).

"In assessing factual sufficiency, we are to consider all of the record evidence, not just the evidence supporting the judgment." *In re G.R.W.*, 191 S.W.3d 896, 899 (Tex. App.—Texarkana 2006, no pet.) (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). We set aside findings "only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, shock the conscience, or clearly demonstrate bias." *C.R.J.*, 2014 WL 199209, at \*5 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

13

## C.     Application of Statutory Requirements

The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and

> (1)     the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
>
>> (A)     the date of the rendition of the order; or
>>
>> (B)     the date of the signing of a mediated or collaborative law settlement agreement on which the order is based;
>
> (2)     the child is at least 12 years of age and has expressed to the court in chambers as provided by Section 153.009 the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child; or
>
> (3)     the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

TEX. FAM. CODE ANN. § 156.101(a).

Here, the trial court concluded that "there have been substantial and material changes in the circumstances of the parties and children to sustain a modification of the prior order." On appeal, David does not challenge this conclusion. Instead, he challenges the court's best-interest determination in connection with the modification under Section 156.101(a). *See* TEX. FAM. CODE ANN. § 156.101(a).[6]

---

[6]David's best-interest challenge relates to the following legal conclusions made by the trial court:

> (3)     That the appointment of David Brian O'Dell as sole managing conservator or continuing to have both parents as joint managing conservators would significantly impair the children's physical health or emotional development.

14

Although the Family Code does not list factors to be considered in determining a child's best interest in a modification proceeding, the Texas Supreme Court has set out the following nonexclusive list of factors to be considered in deciding the issue:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (citations omitted).

Both children were interviewed in chambers by the trial court. Thirteen-year-old A.B.O. indicated her desire to live with McMurtry because she is A.B.O's "go-to person." If A.B.O. needs anything, she goes to McMurtry. A.B.O. further explained that McMurtry supported her and E.B.O., she buys their school clothes, takes them to their sporting events, and pays E.B.O's telephone bill. McMurtry is there when the children need her. A.B.O. is not as close to David as she is to McMurtry. Eleven-year-old E.B.O. testified that she wanted to live with McMurtry because McMurtry has been there for her all of her life. Speaking of McMurtry, E.B.O. testified, "[S]he was a better mom than my actual mom." Also, E.B.O. felt as though there would be times

---

(4) That naming Melanie McMurtry as a joint managing conservator of the children is in the best interest of the children.

(5) That naming Melanie McMurtry as the conservator with the exclusive right to designate the primary residence of the children is in the best interest of the children.

Because conclusion of law number three relates to evidence required to rebut the parental-fitness presumption and because that presumption does not apply here, we limit our discussion solely to the best-interest determination.

15

in her life that she would need a female mentor. E.B.O. indicated that she would rather talk to McMurtry because she always listens, and E.B.O. can express her feelings to McMurtry. E.B.O. would feel uncomfortable, nervous, and sad living with David. The first *Holley* factor weighs in favor of placing the children with McMurtry.

McMurtry has been the children's primary caregiver throughout their life. At the children's request, McMurtry brought the children to her home when they were living with their mother and her boyfriend. She has ensured their attendance at school, has been diligent in making sure the children receive their education, and has maintained contact with school officials and the school counselor. McMurtry provides most of the children's clothing, food, and shelter and makes sure the children are involved in their school activities and rodeo. McMurtry provides stability for the children.

Although the evidence was clear that David was committed to the children and cared for them and that he regularly exercised his visitation rights with the children, it is also apparent that the children have formed a strong bond with McMurtry. Jene, who was the children's managing conservator with the right to determine their residence, failed to provide the children with a stable environment. After the divorce, Jene developed drug problems and lived with different men, bringing her children to live with her. The children disliked this unstable and unwholesome lifestyle, and they called on McMurtry to bring them into her home. And, as any loving grandparent would do, McMurtry brought the children into her home, cared for them, and provided them needed stability. Because McMurtry has been their primary caretaker since shortly after the divorce, the children look to her as the source of stability in their lives. McMurtry has always

encouraged the children to visit David and to have a relationship with him. The children do not have a strong bond with David, and McMurtry expressed her willingness to have the children participate in counseling to understand how to bond with their father. Nothing in the record indicates that David has ever abused or neglected the children.

Based on this evidence, however, we cannot determine that the trial court abused its discretion in determining that the children's best interests were served by naming McMurtry as their joint managing conservator with the exclusive right to determine their residence.

**D.      Sufficient Evidence Supported the Trial Court's Factual Findings**

David contends that the following findings are without sufficient evidentiary support:

- "That Melanie McMurtry had actual exclusive care, control and possession of the subject children for more than six months prior to filing her intervention."

- "That Melanie McMurtry has effectively been the primary caretaker of the subject children for most of their lives."

- "That the subject children have little bond with their father, David Brian O'Dell."

We have previously reviewed the evidence regarding the first challenged finding in connection with our standing analysis. The evidence is sufficient to support this finding. We likewise conclude the evidence is sufficient to support the second challenged finding. From the time the children were quite young, they recall going to spend the night with McMurtry three or four times a week, and she has been their primary caretaker for most of their lives. David told the CPS investigator that the children were normally with their grandmother and that the children lived with McMurtry after March 2012. Kathy Floyd, a licensed professional counselor appointed by

17

the court, testified that the children lived with McMurtry most of their lives. A.B.O., when interviewed by the trial court, stated that she lived with McMurtry most of the time. E.B.O. likewise testified that she and her sister lived with McMurtry, but they visited their mother.

David further contends that the trial court abused its discretion in finding that the children have little bond with him. Although David has never missed a weekend visitation with his children, the children apparently do not feel close to him. David has certainly spent time with the children—he has taken them to Broken Bow during a spring break from school, has taken them to a monster truck show, and has attended some of their rodeos. The children nevertheless feel emotionally distanced from their father. They describe their relationship with David as a three on a scale of one to ten. When interviewed in chambers, the children indicated that when they visited David, he primarily spent his time watching television. They described minimal interaction with him. Other witnesses testified, though, that the children enjoyed being with their father and that David is a very caring and concerned parent. Having heard the entirety of the testimony, and having been in the best position to judge the credibility and demeanor of the witnesses, we cannot say the trial court abused its discretion in entering this finding.[7]

---

[7]David complains of the following additional findings:

    5.    That Melanie McMurtry executed and attached an affidavit on knowledge or belief that contained, along with supporting facts, the allegation that denial of possession of or access to the children would significantly impair the children's physical health or emotional well-being.

    6.    That the facts stated in the affidavit were true and were sufficient to support the relief requested.

18

In his final issue, David contends that the trial court erred by entering judgment based on findings not supported by the evidence. We have analyzed the findings as relevant to this modification proceeding and find that each is well supported in the record.

## IV.    Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:        April 6, 2015
Date Decided:          May 12, 2015

---

7.      That naming David Brian O'Dell as the conservator with the exclusive right to determine the primary residence of the subject children would significantly impair the children's health or emotional development.

8.      That David Brian O'Dell intends to completely deny Melanie McMurtry possession of or access to the children.

Because these findings relate either to David's purported entitlement to the parental presumption or to McMurtry's purported failure to rebut this presumption and because we have previously determined that the parental presumption does not apply to this modification proceeding, we need not analyze the evidentiary sufficiency of these findings. David further complains of the following finding:

That Melanie McMurtry is a parent of a parent of the children and that parent of the children has been incarcerated in jail or prison during the three-month period preceding the filing of the petition; found by a court to be incompetent; is dead; or does not have actual or court-ordered possession of or access to the children.

After the trial court entered findings of fact and conclusions of law, David requested this additional finding. We need not address the evidentiary sufficiency of this finding because it relates solely to the Grandparent Access Statute, which, as explained earlier in this opinion, is not relevant to this modification proceeding.

19